UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY D. KYLES,

                Plaintiff,         Civil Action No. 14-cv-11907
                                                Honorable Gerald E. Rosen
     v.                          Magistrate Judge David R. Grand

KEEFE COMMISSARY NETWORK, LLC,
a Missouri limited liability company,
d/b/a KEEFE GROUP and ACCESS
SECUREPAK,

                Defendant.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]

Before the Court for a report and recommendation is Defendant Keefe Commissary Network, LLC's ("KCN") Motion for Summary Judgment. [14]. *Pro se* Plaintiff Anthony Kyles ("Kyles"), an incarcerated person, filed a response to this motion on December 4, 2014. [16]. Defendant submitted a reply on December 9, 2014. [17]. An order of reference was entered on June 10, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). [6]

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the following reasons, the Court RECOMMENDS that Defendant KCN's Motion for Summary Judgment [6] be GRANTED and Kyles' complaint be dismissed.

1

**I.     REPORT**

    **A.     Factual Background**

Kyles is a State of Michigan prisoner currently incarcerated at the Carson City Correctional Facility. [10 at ¶ 3]. He was incarcerated at the Oaks Correctional Facility during all times relevant to his complaint. [1 Ex. A at ¶ 3].

Keefe Group is a "family of companies that . . . provide food and commercial goods services . . . in the prison industry." [14 at 1]. KCN is a part of Keefe Group, and Access Securepak ("Securepak"), in turn, is a division of KCN. [14-3, Jennen Aff., ¶3]. Securepak "allow[s] family members and friends to send packages [of pre-approved items] to inmates." [*Id.* at ¶¶4, 6]. Securepak also sells and markets goods directly to MDOC inmates. [*Id.* at ¶5]. Such inmate purchases are not made through the prison's commissary. [*Id.*]. Securepak fulfills all orders at a secure processing center and then ships them to the prison; since the items are all pre-approved, the prison need only verify the quantity of items being received. [*Id.* at ¶6].

Keefe Supply is a subsidiary of Keefe Group. [*Id.* at ¶7]. Keefe Supply sells a variety of products directly to the MDOC, which the MDOC in turn sells to inmates in its commissaries. [*Id.*]. Keefe Supply does not sell or market products directly to MDOC inmates. [*Id.*].[1]

Kyles asserts that Securepak falsely and maliciously advertised the Keefe-produced

---

[1] In his initial complaint, Kyles identified Keefe Group and Access Securepak as "Defendant(s)". [1 Ex. A]. Defendant characterized this suit as against "Keefe Commissary Network, LLC, a Missouri limited liability company, d/b/a, Keefe Group and Access Securepak" in its answer to Kyles' complaint, and has maintained that it is acting as a singular defendant in all state and federal court documents. [1 Ex. B]. Defendant attempted to clarify this issue in its notice of removal, stating that KCN was "incorrectly identified as 'Keefe Group and Access Securepak.'" [1 Ex. C]. Kyles now seems to recognize this distinction, and in his amended complaint and response to Defendant's motion for summary judgment appears to have adopted Defendant's characterization of the parties. [10; 16 at 1-2]. Consequently, the Court will treat Kyles' amended complaint as being lodged against KCN (including its alleged d/b/a's) as a singular entity.

2

instant hot cocoa with marshmallows as being a halal[2] product. [1 Ex. A at 3-4]. In an amended complaint, Kyles further stated that "[i]n April 2013, [he] reviewed an Access securepak book which advertised Keefe Group products such as the instant Hot Cocoa with Marshmallows as a Halaal [sic] product . . . . [o]n April 16, 2013 [and May 28, 2013], Plaintiff purchased the Hot Cocoa with Marshmallows under the impression that it was Halaal [sic] certified." [10 at ¶ 7-8]. Defendant and Kyles agree that he purchased the hot cocoa product from the "Oaks Correctional Commissary," and not directly from either Keefe Supply or Securepak. [16 at 4; 14 at 6]. Kyles thus seems to argue that Securepak intentionally and falsely portrayed the Keefe hot cocoa product as halal, which prompted him to purchase the hot cocoa from Keefe Supply, and that both Keefe Supply and Securepak are jointly liable for "maliciously disregard[ing] plaintiff's religious tents [sic] in pursuit of corporate profits. [1 Ex. A at ¶ 11].

On November 6, 2014, KCN filed the instant Motion for Summary Judgment [14] in which it argues that Kyles' claims fail both on the merits and because he failed to properly exhaust his claims. Kyles filed a response [16], and KCN filed a reply [17].

In his amended complaint, which is the operative one [12], Kyles brings claims for alleged violations of the United States Constitution and the Michigan Constitution; the Michigan Consumer Protection Act, MCL 445.903(1)(a)(c)(e); MCL 750.297f (which is a criminal statute related to the advertising, labeling and sale of Halal food products); and the portion of the Federal Trade Commission Act, 15 U.S.C. § 52(a)(1)(2), which prohibits dissemination of false advertisements.[3] [10 at ¶ 1].

---

[2] Halal foods are those "permissible for Muslims to eat or drink under Islamic law." [14 at 1].

[3] Kyles' amended complaint included allegations that Defendant's conduct violated the Lanham Act, 15 U.S.C. 1125(a)(1)(b) and MCL 750.297f. [10 at 1]. In his response to Defendant's Motion for Summary Judgment, Kyles "concede[d] that the Landham [sic] Act or the MCL

3

**B.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir.2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir.2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir.2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Caresource*, 576 F.3d at 558 (internal quotations omitted).

---

750.297(f) [sic] are not proper claims for this action." [14 at 7].  Accordingly, these claims should be dismissed.

## C. ANALYSIS

As set forth above, Kyles alleges in his complaint that Keefe Supply and Securepak falsely and maliciously advertised instant hot cocoa as being halal despite knowledge that it did not meet that standard, thereby violating certain of his federal and state rights. [10 at ¶ 1]. Before analyzing the parties' arguments on the merits of Kyles' claims, the Court addresses KCN's argument that he failed to properly exhaust his claims.

### i. Kyles Did Not Properly Exhaust Available Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). KCN argues that Kyles' claims must be dismissed because he failed to exhaust the administrative remedies available to him. [14 at 9]. Specifically, KCN asserts that Kyles did not raise his concerns with MDOC staff, nor did he initiate the written grievance process required by MDOC policy. [14 at 10]. In support of this allegation, KCN submits Kyles' responses to a set of requests for admissions, in which Kyles admits that he "did not discuss [his] alleged concerns about the hot cocoa with marshmallows product with MDOC staff member [sic] at Oaks Correctional Facility within two days after [he] learned that the product was not halal" and that he "never filed a Grievance with the Grievance Coordinator designated for Oaks Correctional Facility regarding the halal status of the hot cocoa." [14 Ex. 3 at 2].

Under the PLRA, a prisoner must exhaust available administrative remedies, even if he would be unable to obtain the specific relief he seeks through the state administrative process. *See Porter, 534 U.S. at 520; Booth, 532 U.S. at 741*. In order to properly exhaust administrative

remedies, prisoners must complete the administrative review process in accordance with the applicable deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). In determining whether a plaintiff has properly exhausted his claim, the relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 200 (2007). Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *Id.* at 216; *Vandiver v. Corr. Med. Servs., Inc.*, 326 Fed. Appx. 885, 888 (6th Cir.2009).

In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130 (the "Grievance PD"). [14 Ex. 7]. State prisoners must first complete the process outlined in the Grievance PD, including pursuing a grievance through "all three steps of the grievance process," before the challenged conduct can be brought as a lawsuit. (*Id.* at ¶ B). A prisoner must attempt to resolve the dispute with the staff member involved within two days; if the issue remains unresolved, he has five business days to file a written Step I grievance. (*Id.* at ¶¶ P, V). If the prisoner is dissatisfied with the Step I response, he may submit a Grievance Appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response was received, within ten days of the date the response was due. (*Id.* at ¶ BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶ FF). Only after a prisoner has completed each of these steps in the grievance process may he file a lawsuit in compliance with the PLRA. *See Palmer v. Flore*, No. 09-14642, 2014 WL 821309 (E.D. Mich. Mar. 3, 2014).

Here, Kyles has admitted that he did not initiate, much less complete, the grievance process. [14 Ex. 4 at 2]. Kyles does not dispute this fact in his response to KCN's Motion for

Summary Judgment, but rather seems to argue that: i) he attempted to resolve his complaints through informal channels and thus has followed the spirit of the MDOC Grievance PD, and ii) that following the grievance procedure would have been futile and thus unnecessary. [16 at 6].

Kyles states that he "was a member of the Oaks Correctional Facility Warden forum . . . [and that the purpose of the forum] is to bring to the attention of the staff issue [sic] which effect [sic] the prison population which are considered non-grievable issues." [16 at 6.]. He points to subsections (F) and (F)(5) of the Grievance PD, which state that "[g]rievances that raise the following non-grievable issues also shall be rejected: . . . Issues not within the authority of the Department to resolve." Kyles alleges that he mentioned his concerns to the Oaks Correctional Facility Warden forum, stating that he

> brought up the issue that the Keefe Instance [sic] Hot Cocoa with marshmallows was not halaal [sic] as advertised. Plaintiff ask [sic] to see if this product could be changed or could someone contact Keefe to see if the Gelatin was a type which made it halal. Staff informed plaintiff that all changes are done through the regional committee and there was nothing that could be done.

[16 at 6]. To whatever extent Kyles argues that he followed the spirit of the Grievance PD by addressing his complaints to the Oaks Correctional Facility Warden forum, he nevertheless failed to complete the specific written grievance process set forth by that policy.

Kyles next seems to argue that his failure to follow the MDOC grievance process does not violate the PLRA because filing a grievance would have been futile. Kyles also cites MDOC Policy Directive 04.02.130(I), which establishes the existence of a Store Contract Committee, which "shall be responsible for determining which items shall be sold by each regional store taking into consideration recommendations received from the Wardens of institutions serviced by the regional store." Kyles thus seems to suggest that filing a grievance would be futile because the persons and entities with which he could lodge a grievance at the Oaks Correctional

7

Facility would lack the power to change the halal listing on the offending hot cocoa product.

Kyles' futility argument is unavailing. The Sixth Circuit has found that the PLRA's exhaustion requirement

> is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, *Brock v. Kenton County*, 93 Fed. Appx. 793, 798 (6th Cir.2004); even when the state cannot grant the particular relief requested, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); and "even where [the prisoners] believe the procedure to be ineffectual or futile . . . ." *Pack v. Martin*, 174 Fed. Appx. 256, 262 (6th Cir.2006).

*Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). Moreover, the Sixth Circuit has found that no futility exception applies to the PLRA's exhaustion requirement. *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006). Additionally, it is far from clear that Kyles has established that pursuing the grievance process would have been futile. That a Store Contract Committee determines which products will be available at MDOC commissaries does not necessarily compel a conclusion that a prisoner is unable to challenge the products available in his commissary by filing a grievance.

Because Kyles made no attempt to follow the grievance procedure set forth in the Grievance PD, he failed to properly exhaust his Section 1983 claims, and they should be dismissed.

### ii. *Kyles' Has Abandoned Some, But Not All of His Claims for Relief*

KCN argues that Kyles' claims are moot and should be dismissed because "the relief he seeks has already been satisfied, *i.e.* the Access Securepak Prisoner Store Catalog no longer lists the hot cocoa product as halal." [17 at 1]. Kyles admits that "defendants have done what plaintiff set out to do [which] was [to] have them remove the Halal advertisement off their product." [16 at 7-8]. Thus, while Kyles appears to have abandoned his request for prospective

8

injunctive relief against KCN, namely a change to their hot cocoa advertising, nothing in his filings suggests that he has abandoned his request for compensatory damages, punitive damages, and costs. [10 at 4]. Accordingly, his admission moots his claims for injunctive relief, but not for money damages.

### iii. KCN's Merits-Based Arguments

Even if the Court found that Kyles' claims are not barred by the PLRA, it would nonetheless recommend granting KCN's Motion for Summary Judgment because none of his claims are cognizable under state or federal law.

#### a. Kyles' § 1983 Claims Fail because KCN and its D/B/A's and Affiliates did not Act under Color of State Law

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or the laws of the United States; and (2) the deprivation was caused by a person acting under color of state law." *Smith v. Mohr*, No. 12-3241, 2012 WL 10235347, at *1 (6th Cir. Oct. 17, 2012). Private entities that perform traditional state functions such as providing medical services to inmates or operating prisons are regularly found to act under color of state law for § 1983 purposes. *See*, *e.g.*, *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014); *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). Similarly, courts have regularly found that private companies which are contracted to take over food services for prisons act under color of state law. *See*, *e.g.*, *Dotson v. Shelby Cnty.*, No. 13-2766-JDT-TMP, 2014 WL 3530820, at *13 (W.D. Tenn. July 15, 2014); *Johnson v. Aramark*, No. 3:11CV-P517-M, 2012 WL 219503, at *2 (W.D. Ky. Jan. 25, 2012) aff'd, 482 F. App'x 992 (6th Cir. 2012).

However, no Sixth Circuit court has found that a private corporation acts under color of state law by merely supplying products to a department of corrections or selling products directly

to prisoners, which is all KCN is accused of here. On the contrary, numerous federal courts have found that corporations involved in such activities did not act under color of state law. *See*, *e.g.*, *LaPlante v. Lovelace*, No. 2:13-CV-32, 2013 WL 5572908, at *12 (W.D. Mich. Oct. 9, 2013) (finding no evidence that Keefe Supply Company acted under color of state law by selling products to a MDOC commissary, because its conduct could not be "fairly attributed to the state"); *Smith v. Ozmint*, No. CA 9:07-3644-PMD-BM, 2009 WL 692828, at *4 (D.S.C. Mar. 12, 2009) aff'd, 356 F. App'x 646 (4th Cir. 2009) (finding that a company which produced hygiene products for sale to prison commissaries did not act under color of state law, and stating that "the mere act of selling something to a government entity to be distributed to inmates does not render the manufacturer or distributor state actors"); *Plummer v. Valdez*, No. 3-06-CV-1119-B, 2006 WL 2713784, at *2 (N.D. Tex. Sept. 21, 2006) (holding that a private corporation that sold products a jail commissary did not act under color of state law).

Similarly, the Sixth Circuit Court of Appeals has found that "a vendor selling products [directly] to prisoners in the custody of the Michigan Department of Corrections . . . was not acting under the color of state law and was not liable . . . under 42 U.S.C. § 1983." *Bomer v. Access Catalog Co.*, 75 F. App'x 382, 383 (6th Cir. 2003). This position has been long applied by courts within the Sixth Circuit. *See, e.g.*, *Hardin v. Brown & Williamson Tobacco Co.*, No. G87-503 CA1, 1988 WL 288976, at *2 (W.D. Mich. Dec. 27, 1988) (holding that a corporation which was permitted to sell tobacco to prisoners was not acting under color of state law). Securepak thus was not acting under color of state law by engaging in selling products directly to prisoners.

Because neither KCN nor its d/b/a's or affiliates acted under color of state law, Kyles' § 1983 claims should be dismissed. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50

(1999) ("A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct") (internal quotations omitted); *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (holding that "a private entity working on its own cannot deprive a citizen of First Amendment rights").[4]

### b. Kyles' FTC Act Claim Fails

Kyles' claim under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 52(a)(1)(2), should be dismissed. "[P]rivate parties are not authorized to file enforcement actions [under the FTC Act], only the FTC has that authority." *Taggart v. GMAC Mortgage, LLC*, No. CIV.A. 12-415, 2012 WL 5929000, at *6 (E.D. Pa. Nov. 26, 2012); *see also Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1002 (D.C. Cir. 1973) (finding no implied right of private enforcement of the FTC Act; *Friend v. Fryberger, Buchanan, Smith & Frederick*, P.A., No. 11-CV-1584 PJS/LIB, 2012 WL 503796, at *4 (D. Minn. Feb. 14, 2012) (same).

### c. Kyles' MCPA Claim Fails

Kyles' claim under the Michigan Consumer Protection Act ("MCPA"), MCL 445.903(1)(a)(c)(e) should also be dismissed. The purpose of the MCPA is to "prohibit certain practices in trade or commerce, and to provide for certain remedies." *Price v. Long Realty, Inc.*, 199 Mich. App. 461, 470 (1993). The MCPA does not apply to "a transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL § 445.904(1)(a). Michigan courts have held that the relevant inquiry in determining whether an exemption applies is "whether the

---

[4] For the same reasons as just articulated, Kyles' state constitutional law claims should be dismissed. The Michigan Supreme Court has held that the First Amendment to the United States Constitution and Article 1 §5 of the 1963 Michigan Constitution are coextensive, thus the same analysis applies to both claims. *See Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011); *Smith ex rel. Smith v. Mount Pleasant Pub. Sch.*, 285 F. Supp. 2d 987, 991 (E.D. Mich. 2003); *Jott, Inc. v. Charter Twp. of Clinton*, 224 Mich. App. 513, 526 (1997).

general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 212 (2007) (quoting *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465 (1999). Conduct is "specifically authorized" when it is "explicitly sanctioned" by law. *Liss*, 478 Mich. at 213.

In this case, KCN asserts that it is exempt from liability under the MCPA because Keefe Supply's general conduct of manufacturing and selling food products is authorized by the United States Food and Drug Administration ("FDA") and because Securepak's conduct of selling and marketing products through the MDOC is expressly authorized by the MDOC. [14 at 17-18]. KCN is correct that the Securepak program has been authorized by MDOC policy directives, thus the general transaction of marketing and selling products directly to prisoners is exempt from liability under the MCPA. *See* MDOC Policy Directive 04.02.135 ("Securepak Program") (stating that "[t]he Securepak Program is a Department-approved customized package program that allows family members and others to send authorized items to prisoners while safeguarding against the introduction of contraband . . . [p]risoners in general population also may place orders for their personal use . . . [a] vendor catalog identifying items available for purchase through the Securepak Program shall be available to prisoners" . . . "[t]he Store Contract Committee shall be responsible for determining which items shall be available for purchase through the Securepak Program.").

Similarly, the items available at MDOC commissaries are set forth by MDOC policy directive. *See* MDOC Policy Directive 04.02.130 ("Prisoner Store") (stating that "[the Store Contract] Committee shall be responsible for determining the items to be included on the Department's Standardized Store List, subject to approval of the CFA Deputy Director."). Because the MDOC approves all of the products offered in the Securepak program and through

its commissaries, KCN's conduct is authorized by statute or agency action, and Kyles' MCPA claim should be dismissed. To whatever extent Kyles is alleging that Keefe Supply improperly manufactured its hot cocoa product, its general conduct of producing and packaging food is explicitly authorized by federal food regulations, and is thus also exempt from liability under the MCPA. *See Alexander v. Del Monte Corp.*, No. 09-12303, 2011 WL 87286, at *2 (E.D. Mich. Jan. 11, 2011) (finding that a food producer was exempt from the MCPA because its conduct of producing, packaging, and holding food products was authorized by the Food and Drug Administration.).

### d. Kyles' Criminal Advertising Claim Fails

Finally, Kyles' claim under MCL 750.297f should be dismissed. MCL 750.297f defines the term halal, and prohibits food sellers from intentionally defrauding shoppers through falsely representing that food is halal. *Id*. A person who violates that statute is guilty of a misdemeanor. *Id*. at § 750.297f(2). "[C]riminal statutes generally do not provide a private right of action to private citizens." *Ssayed v. Western Mich. Univ.*, 2013 WL 3277139, at *3 (W.D. Mich. Jun. 27, 2013) (citing *People v. Herrick*, 216 Mich. App. 594, 601 (1996) and *Am. Postal Workers Union, AFL–CIO v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) (noting that "the general rule is that a private right of action is not maintainable under a criminal statute")). "Although Michigan courts have held that in certain situations a private remedy for damages may be inferred from a criminal statute," *id.* (citing *Lash v. City of Traverse City*, 479 Mich. 180, 192–93 (2007) and *Gardner v. Wood*, 429 Mich. 290 (1987)), Kyles has not argued or shown why the statute in question would be appropriate for a civil remedy. Nor is the Court aware of any case in which that statute has been applied to recover civil damages. Accordingly, this claim should be dismissed.

In sum, because the Court has found that each of Kyles' claims lack merit, KCN's motion for summary judgment should be granted.

### C. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS GRANTING** Defendant Keefe Commissary Network's Motion for Summary Judgment **[14]** and **DISMISSING** Plaintiff Kyles' complaint. **[1]**.

Dated: March 24, 2015         s/David R. Grand
Ann Arbor, Michigan           DAVID R. GRAND
                              United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager

Dated: March 24, 2015